TROUTMAN PEPPER HAMILTON SANDERS LLP
Jennifer Mathis, SBN 187275
jennifer.mathis@troutman.com
Peter W. Bloom, SBN 313507
peter.bloom@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: 415.477.5700
Facsimile: 415.477.5710

*Attorneys for RLI INSURANCE COMPANY*

FOLEY & LARDNER LLP
KIMBERLY A. KLINSPORT, CA Bar No. 259018
kklinsport@foley.com
KELSEY C. FINN, CA Bar No. 334670
kfinn@foley.com
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone: 213.972.4500
Facsimile: 213.486.0065

*Attorneys for ARCH INSURANCE COMPANY*

TROUTMAN PEPPER HAMILTON SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| RLI INSURANCE COMPANY and ARCH INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL MARCIANO, MAURICE MARCIANO, ALEX YEMENIDJIAN, CARLOS ALBERINI, CYNTHIA LIVINGSTON, ANTHONY CHIDONI, and DEBORAH WEINSWIG, and GUESS?, INC.,<br><br>Defendants. | Case No. 2:23-2661<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

## INTRODUCTION

1. Plaintiff RLI Insurance Company ("RLI," a citizen of Illinois) and Arch Insurance Company ("Arch," a citizen of Missouri and New Jersey) (collectively, the "Excess Carriers") bring this Complaint against Defendants Guess?, Inc. ("Guess," a citizen of California and Delaware), Paul Marciano (a citizen of California), Maurice Marciano (a citizen of California), Alex Yemenidjian (a citizen of Nevada), Carlos Alberini (a citizen of California), Cynthia Livingston (a citizen of Connecticut), Anthony Chidoni (a citizen of California), and Deborah Weinswig (a citizen of New York) (collectively "Defendants"; collectively but excluding Guess "Director Defendants"). The Excess Carriers are informed and believe and therefore allege as follows:

2. This action seeks a declaration that the Excess Carriers' claims-made-and-reported directors and officers liability policies issued to Guess for a 2008-09 Policy Period do not provide insurance coverage for Defendants in connection with two shareholder derivative breach-of-fiduciary-duty lawsuits filed in 2022 and 2023 on behalf of Guess against the Director Defendants.

3. Defendants assert that those two shareholder derivative lawsuits are sufficiently related to a sexual harassment lawsuit filed in 2009 by a former Guess employee against Paul Marciano and Guess ("the Ring Action") such that the two shareholder derivative lawsuits, filed in 2022 and 2023, constitute the same Claim as the Ring Action.

4. The Excess Carriers disagree with Defendants' assertion that the two shareholder derivative lawsuits are sufficiently related to the 2009 sexual harassment lawsuit such that they all constitute a single Claim first made during the Excess Carriers' 2008-09 Policy Period.

5. Defendants initially agreed with the Excess Carriers' coverage determination. Indeed, Defendants sought coverage for the 2022 and 2023 shareholder derivative lawsuits under the directors and officers liability insurance

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

policies issued to Guess for the 2021-22 Policy Period. After one or more insurers in Guess's 2021-22 Policy Period tower denied coverage for the two shareholder derivative lawsuits, Defendants changed course.

6. Defendants now are pursuing coverage for the shareholder derivative lawsuits under claims-made-and-reported policies issued 13 years earlier. In doing so, Defendants cherry-pick just one of myriad background allegations in the shareholder derivative lawsuits to stretch beyond credulity the definition of "relatedness," disregarding the very purpose of claims-made-and-reported insurance.

7. The two shareholder derivative lawsuits, filed in 2022 and 2023, are not related to the sexual harassment lawsuit filed in 2009, and thus the Claims do not constitute a single Claim first made during the Excess Carriers' 2008-09 Policy Period.

8. Accordingly, for reasons discussed further below, the Court should declare that the Excess Carriers' claims-made-and-reported directors and officers liability policies issued to Guess for a 2008-09 Policy Period do not provide insurance coverage for Defendants in connection with two shareholder derivative breach-of-fiduciary-duty lawsuits filed in 2022 and 2023 on behalf of Guess against the Director Defendants.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, because Defendants seek coverage from the Excess Carriers under policies of at least $10 million for an underlying dispute where the claimants seek more than $75,000 in monetary damages and the Defendants' defense expenses will exceed $75,000.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims at issue occurred in this District.

Additionally, at least one of the Defendants resides in this District, and thus venue is also proper under 28 U.S.C. § 1391(b)(1).

**THE PARTIES**

11. RLI is an Illinois corporation with its principal place of business in the State of Illinois and is thus a citizen of Illinois within the meaning of 28 U.S.C. § 1332(a).

12. Arch is a Missouri corporation with its principal place of business in the State of New Jersey and thus is a citizen of both Missouri and New Jersey within the meaning of 28 U.S.C. § 1332(a).

13. Guess is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles, California, and thus is a citizen of both California and Delaware within the meaning of 28 U.S.C. § 1332(a).

14. The Excess Carriers are informed and believe, and thereon allege, that Paul Marciano is domiciled in California, and thus is a citizen of California within the meaning of 28 U.S.C. § 1332(a). Paul Marciano is a co-founder and director of Guess, as well as Guess's current Chief Creative Officer.

15. The Excess Carriers are informed and believe, and thereon allege, that Maurice Marciano is domiciled in California, and thus is a citizen of California within the meaning of 28 U.S.C. § 1332(a). Maurice Marciano is a co-founder and director of Guess.

16. The Excess Carriers are informed and believe, and thereon allege, that Alex Yemenidjian is domiciled in Nevada, and thus is a citizen of Nevada within the meaning of 28 U.S.C. § 1332(a). Alex Yemenidjian is a director of Guess.

17. The Excess Carriers are informed and believe, and thereon allege, that Carlos Alberini is domiciled in California, and thus is a citizen of California within the meaning of 28 U.S.C. § 1332(a). Carlos Alberini is the Chief Executive Officer and a director of Guess.

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

18. The Excess Carriers are informed and believe, and thereon allege, that Cynthia Livingston is domiciled in Connecticut, and thus is a citizen of Connecticut within the meaning of 28 U.S.C. § 1332(a). Cynthia Livingston is a director of Guess.

19. The Excess Carriers are informed and believe, and thereon allege, that Anthony Chidoni is domiciled in California, and thus is a citizen of California within the meaning of 28 U.S.C. § 1332(a). Anthony Chidoni is a director of Guess.

20. The Excess Carriers are informed and believe, and thereon allege, that Deborah Weinswig is domiciled in New York, and thus is a citizen of New York within the meaning of 28 U.S.C. § 1332(a). Deborah Weinswig is a director of Guess.

## FACTUAL BACKGROUND

### The 2008-09 Policies

21. Federal Insurance Company issued Executive Protection Portfolio Policy No. 6803-4570 to Guess for the November 1, 2008 to November 1, 2009 **Policy Period** (the "Primary Policy"). *See* Ex. 1, at 37, Primary Policy, Decl. Item 2. A true and correct copy of the Primary Policy is attached hereto as Exhibit 1. The Excess Carriers incorporate the contents of the Primary Policy as if fully set forth herein.

22. The Primary Policy is a claims-made-and-reported policy, providing coverage only for **Claims** first made during the November 1, 2008 to November 1, 2009 **Policy Period** or an Extended Reporting Period of one year (the "2008-09 Policy Period"). Ex. 1, at 53, 2008-09 Primary Policy, Executive Liability & Entity Securities Liability Coverage Section (hereinafter "D&O Coverage Part"), Insuring Clauses 1 & 2.

23. RLI issued Excess Policy No. EPG0008809 to Guess for the same November 1, 2008 to November 1, 2009 **Policy Period** (the "RLI Excess Policy"). Ex. 2, at 114, RLI Excess Policy, Decl. Item 2. The RLI Excess Policy affords up to $10 million of coverage excess of the applicable retention and $10 million in underlying insurance provided by the Primary Policy. Ex. 2, at 114, RLI Excess



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

Policy, Decl. Items 3 & 4. The RLI Excess Policy provides, by Endorsement, that it "shall follow form of, and shall afford coverage in conformance with, the following sections of the **Primary Policy**: All Sections…." Ex. 2, at 121, RLI Excess Policy, Insuring Clause 1, as amended by Endt. MAN-SCR-972(10/08). A true and correct copy of the RLI Excess Policy is attached hereto as Exhibit 2. RLI incorporates the contents of the RLI Excess Policy as if fully set forth herein.

24. Arch issued Excess Insurance Policy No. DOX0023347-01 to Guess for the same November 1, 2008 to November 1, 2009 **Policy Period** (the "Arch Excess Policy"). Ex. 3, at 125, Arch Excess Policy, Decl. Items 1, 2. The Arch Excess Policy contains a $10 million Aggregate Limit of Liability excess $20 million of coverage provided, if ever, by the **Underlying Insurance**. *Id.* Decl. Item 3. The coverage provided by the Arch Excess Policy applies in conformance with the terms and conditions of the Primary Policy and in conformance with any terms and conditions further limiting or restricting coverage in the Arch Excess Policy or in any other **Underlying Insurance**. *Id.*, Section I, INSURING AGREEMENT. The **Underlying Insurance** means "the **Primary Policy** and any **Underlying Excess Policies** listed in Item 5. of the Declarations of this Policy." *Id.*, III. DEFINITIONS, D. Item 5. of the Declarations identifies the **Primary Policy** as Federal Insurance Company, Policy No. 6803-4570, $10 Million Limit of Liability and identifies the **Underlying Excess Policy(ies)** as RLI Insurance Company, Policy No. EPG0008809, $10 Million Limit of Liability. A true and correct copy of the Arch Excess Policy is attached hereto as Exhibit 3. Arch incorporates the contents of the Arch Excess Policy as if fully set forth herein.

25. Subject to all of the Primary Policy's terms, conditions, limitations, and exclusions, the relevant Insuring Clauses of the Primary Policy (Insuring Clauses 1 and 2), afford coverage for **Loss** which the **Insured** becomes "legally obligated to pay on account of any **Claim** first made against the **Insured Person**, individually or otherwise during the **Policy Period** or, if exercised, during the Extended Reporting



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided" in the Primary Policy. Ex. 1, at 53, Primary Policy, D&O Coverage Part, Insuring Clauses 1 & 2).

26. The Primary Policy defines the term "**Claim**" to mean, in pertinent part, "a written demand for monetary damages or non-monetary relief [or] a civil proceeding commenced by the service of a complaint or similar pleading…." Ex. 1, at 54, Primary Policy, D&O Coverage Part, Section 5(1).

27. The Primary Policy defines the term "**Wrongful Act**" as "(a) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity**, or for purposes of coverage under Insuring Clause 3, by the **Organization**, or (b) any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**." Ex. 1, at 55, Primary Policy, D&O Coverage Part, Section 5.

28. The Primary Policy defines "**Related Claims**" to mean "all **Claims** for **Wrongful Acts** based upon, arising from, or in consequence of the same or related facts, situations, transactions or events or the same or related series of facts, situations, transactions or events." Ex. 1, at 57, Primary Policy, D&O Coverage Part, Section 5, as amended by Endt. 17.

29. The Primary Policy further provides in relevant part that all **Related Claims** "shall be treated as a single **Claim** first made on the date the earliest of such **Related Claims** was first made…." Ex. 1, at 62, Primary Policy, D&O Coverage Part, Section 13(g)….."

**<u>Unique RLI Excess Policy Provisions</u>**

30. The RLI Excess Policy provides:

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

1. Section 1., **INSURING CLAUSE**, is deleted in its entirety and replaced with the following:

"1. The Insurer shall provide the Insureds with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the full amount of the Underlying Limit for such **Policy Period** is paid in legal currency by:

(a) the Insurers of the **Underlying Insurance** or DIC Insurance, if purchased, or,

(b) The **Insureds**, if an Insurer of the **Underlying Insurance** is insolvent or if the Insurer otherwise consents to such payment by the **Insureds**, such consent not to be unreasonably withheld.

Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** and, to the extent coverage is further limited or restricted thereby, the terms and conditions of any other **Underlying Insurance**, except as otherwise provided herein. In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Insurance**.

Ex. 2, at 119, RLI Excess Policy, Depletion of Underlying Limits Endorsement.

31. The RLI Excess Policy defines "**Underlying Limit**" to mean "the amount equal to the aggregate of all limits of liability as set forth in Item 4. Of the Declarations for all **Underlying Insurance** plus the applicable uninsured retention, if any, under the **Primary Policy**." RLI Excess Policy, Section 2(g).

32. The RLI Excess Policy provides that RLI:

shall not be liable under this Policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to the Pending or Prior Date set forth in Item 7. of



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

the Declarations, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein.

33. (the "RLI Prior and Pending Exclusion"). Ex. 2, at 117, RLI Excess Policy, Section 8. The Pending or Prior Date set forth in the RLI Excess Policy's Declarations is February 5, 1997. Ex. 2, at 114, RLI Excess Policy, Decl. Item 7.

**<u>Unique Arch Excess Policy Provisions</u>**

34. Endorsement No. 3 to the Arch Excess Policy provides, in pertinent part:

1. Section I, B is amended to read in its entirety as follows:

B. The insurance coverage afforded by this Policy shall apply only after:

1. the insurer(s) of the **Underlying Insurance** and/or

2. the **Insureds**, either (i) pursuant to a Limit Reduction Agreement (as defined below) with the insurer(s) of the **Underlying Insurance**, or (ii) by reason of the financial insolvency of the insurer(s) of the **Underlying Insurance**,

shall have paid in legal currency loss covered under the **Underlying Insurance** equal to the full amount of the **Underlying Limit**, and after the **Insureds** shall have paid the full amount of any applicable deductible or self insured retentions.

2. For purposes of this Policy, the **Underlying Limit** shall be deemed to be depleted or exhausted solely as the result of the insurer(s) of the **Underlying Insurance** and/or the **Insureds** paying loss covered under the **Underlying Insurance** as provided in paragraph 1. of this endorsement.

Ex. 3, at 136, Arch Excess Policy, Endorsement No. 3.

35. The Arch Excess Policy defines "**Underlying Limit**" to mean "an amount equal to the aggregate of all limits of liability for all **Underlying Insurance**, plus the deductible or self insured retention, if any, applicable under the **Primary Policy**." Ex. 3, at 131, Arch Excess Policy, Section III, DEFINITIONS. E.

36. The Arch Excess Policy's "PENDING AND PRIOR LITIGATION EXCLUSION (EXCESS)" Endorsement provides:

In consideration of the premium charged, it is hereby understood and agreed that:

1. The **Excess Insurer** shall not be liable to make any payment in connection with a **Claim** arising out of, based upon or attributable to:

   a. any litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** occurring prior to, or pending as of, 2/5/1997;

   b. any subsequent litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** arising from or based on any matter alleged in such prior or pending litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**; or

   c. any **Wrongful Act** which gave rise to such prior or pending litigation, formal or informal investigations, administrative proceedings, claim, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**, or any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described above, constitute **Interrelated Wrongful Acts**.

2. "**Wrongful Act**" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act.



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

3. "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of casually connected facts, circumstances, situations, events transactions or causes.

All other terms and conditions of this Policy remain unchanged.

(the "Arch Pending and Prior Exclusion"). Ex. 3, at 134, Arch Excess Policy, Endorsement No. 1.

**<u>The Shareholder Derivative Actions</u>**

**The ERSRI Action**

37. On September 19, 2022, Employees' Retirement System of Rhode Island ("ERSRI"), a state pension fund, initiated a derivative action in the Delaware Chancery Court styled *Employees' Retirement System of Rhode Island v. Paul Marciano, et al.*, C.A. No. 2022-0839-LWW on behalf of Guess and against the Director Defendants (the "ERSRI Action"). A true and correct copy of the publicly-filed version of the operative complaint in the ERSRI Action is attached hereto as Exhibit 4. The Excess Carriers incorporate the contents of the ERSRI Action Complaint as if fully set forth herein.

38. ERSRI alleges that Guess's Board of Directors formed a special committee in February 2018 to investigate allegations of sexual misconduct levied against Paul Marciano (the "Special Committee"). Ex. 4, ERSRI Compl. ¶ 55. The Special Committee's investigation took place between February and June 2018. Ex. 4, ERSRI Compl. ¶ 60-62. On June 7, 2018, the Special Committee presented its findings to the Board of Directors, concluding that the investigation "confirmed that, in certain occasions, Mr. Marciano exercised poor judgment in his communications with models and photographers, and that he placed himself in situations with models and employees in connection with his duties at Guess where plausible allegations of improper conduct could, and did, arise." Ex. 4, ERSRI Compl. ¶ 68.

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

39. ERSRI alleges that, despite its conclusion, the report shows that the Special Committee did not take the investigation seriously. Ex. 4, ERSRI Compl. ¶ 65.

40. On June 11, 2018, the Board of Directors allegedly met to discuss the Special Committee's report and determined that Paul Marciano would: (1) step down as Guess's Chairman and Chief Creative Officer but remain a director; and (2) cease serving as an executive and receiving compensation when his employment agreement expired on January 30, 2019. Ex. 4, ERSRI Compl. ¶ 73. Additionally, the Board of Directors adopted certain corporate reforms, including: (1) requiring witnesses be present during modeling and photographic process; (2) amending Guess's Code of Ethics to require reporting to the Board of Directors of any allegations of misconduct by a senior executive; and (3) requiring annual anti-harassment training. Ex. 4, ERSRI Compl. ¶ 73-76. Despite the Board of Directors reaching these conclusions, ERSRI alleges the Board of Directors reinstalled Paul Marciano as Chief Creative Officer on January 30, 2019. Ex. 4, ERSRI Compl. ¶ 79-81. Following his reinstatement as a Guess officer, new allegations of sexual misconduct were levied against Paul Marciano. Ex. 4, ERSRI Compl. ¶ 85-101.

41. ERSRI alleges that the Board of Directors inexplicably and in bad faith violation of their fiduciary duties continued to allow Paul Marciano to serve as a director and Guess's Chief Creative Officer following the 2018 investigation. Ex. 4, ERSRI Compl. ¶ 102-105. ERSRI alleges that the reforms "purportedly implemented" after the Special Committee investigation should have required that the allegations of misconduct against Paul Marciano be reported both to the Board of Directors and Guess's Human Resources and Legal Department and should have been treated as grounds for termination for cause. Ex. 4, ERSRI Compl. ¶ 103. ERSRI alleges that the Board of Directors failed to follow its own reform by renominating Paul Marciano for a director position on May 13, 2019, despite a "withhold campaign" by investor Legion Partners. Ex. 4, ERSRI Compl. ¶ 105. As

a result, ERSRI alleges, the Board of Directors either failed to implement the corporate reforms they deemed necessary in June 2018 or they ignored, and in bad faith disregarded, red flags about Paul Marciano's behavior following the Special Committee's 2018 investigation. Ex. 4, ERSRI Compl. ¶ 108.

42. In addition, ERSRI alleges that the control over the Board exercised by Paul Marciano and his brother, co-founder and Board member, Maurice Marciano, has resulted in the Marcianos handpicking key members of management, thereby allowing the Marcianos to engage in a series of lucrative conflicted related-party transactions. Ex. 4, ERSRI Compl. ¶¶ 38, 40-41.

43. Based on the foregoing allegations, ERSRI asserts a cause of action against the Director Defendants, excluding Paul Marciano, alleging that they violated and breached their fiduciary duties by (a) willfully ignoring allegations of Paul Marciano's sexual abuse, (b) allowing Paul Marciano to maintain his Board seat and serve out the remaining term of his employment contract after the 2018 Investigation found that plausible allegations of improper conduct could, and did, arise, and (c) allowing Paul Marciano to continue in his role as Chief Creative Officer and paying him $45 million in compensation following the expiration of his employment agreement and remain a director at the Company even after additional allegations of sexual misconduct surfaced following the 2018 Investigation. Ex. 4, ERSRI Compl. ⁋ 166. ERSRI also asserts a cause of action against Paul Marciano alleging that Paul Marciano violated and breached the fiduciary duties he owed Guess as an officer, director, and controlling stockholder, by engaging in reprehensible sexual abuse. Ex. 4, ERSRI Compl. ⁋ 160. ERSRI seeks a declaration that the Director Defendants breached their fiduciary duties and seeks monetary damages that the Director Defendants' failure to perform their fiduciary duties allegedly has caused Guess to suffer, including damage to Guess' corporate image and goodwill. Ex. 4, ERSRI Compl., Prayer for Relief.

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

**The Legion Partners Action**

44. On February 17, 2023, Legion Partners Holdings, LLC ("Legion Partners") filed a verified stockholder derivative action on behalf of Guess and against the Director Defendants in Delaware Chancery Court styled *Legion Partners Holdings, LLC, v. Paul Marciano, et al*, C.A. No.: 2023-0197 (the "Legion Partners Action"). A true and correct copy of the operative complaint in the Legion Partners Action is attached hereto as Exhibit 5. The Excess Carriers incorporate the contents of the Legion Partners Action Complaint as if fully set forth herein.

45. Legion Partners alleges that the Director Defendants breached their fiduciary duties to Guess "by not terminating but instead allowing Paul Marciano to continue in his role as Chief Creative Officer and paying him millions of dollars in compensation following the expiration of his employment agreement [on January 30, 2019] and remain a director at the Company even after additional allegations of sexual misconduct surfaced following the 2018 investigation, by failing to commence litigation in response to [Legion Partners' January 11 2022] Demand against the Board and senior Guess officers to recover damages to the Company caused by Paul Marciano, and by failing to obtain tolling agreements with possible defendants in order to preserve the Company's rights." Ex. 5, Legion Partners Compl. ⁋ 67.

46. Legion Partners further alleges that the Board has catered to the Marcianos for years in various related party transactions that benefitted the Marcianos financially. Ex. 5, Legion Partners Compl. ⁋⁋ 32-41.

47. Legion Partners also alleges the Board has allowed Maurice Marciano to continue to serve on the Board despite serious health issues arising out of an August 2020 bicycle accident. Ex. 5, Legion Partners Compl. ⁋⁋ 45-46.

48. Based on the foregoing allegations, Legion Partners asserts a single cause of action against the Director Defendants, excluding Paul Marciano, for breach of fiduciary duties. Ex. 5, Legion Partners Compl. ⁋⁋ 66-71.

**Tender of the Derivative Actions**

49. Defendants tendered the ERSRI Action to the insurers who issued directors and officers liability policies to Guess for the December 15, 2021 to December 15, 2022 Policy Period ("2021-22 Policy Period"). In doing so, Defendants took the position that the ERSRI Action fell under the coverage of the 2021-22 Policy Period.

50. After the 2021-22 primary insurer denied coverage on the ground that the ERSRI Action related back to the Ring Action, a position Guess disputed, Defendants changed course and tendered the ERSRI Action, and later the Legion Partners Action (together, the "Derivative Actions"), to the Excess Carriers for coverage under the directors and officers liability policies they issued to Guess for the 2008-09 Policy Period.

51. In tendering the ERSRI Action for coverage under the 2008-09 Policy Period, Guess told the Excess Carriers that Defendants disputed the position taken by the 2021-22 Policy Period primary insurer that the ERSRI Action related back to the Ring Action. Guess has since changed course, more currently asserting that the Derivative Actions relate back to the Ring Action and thus fall under the 2008-09 Policy Period.

**<u>The 2009 Ring Action And Other Earlier Alleged Misconduct</u>**

52. The Ring Action is referenced briefly in passing in the operative 136-paragraph complaint in the ERSRI Action. The Ring Action is referenced as one of several examples as part of a larger section of the Complaint devoted to Paul Marciano's alleged "Sordid History of Severe Sexual Misconduct" dating back to as early as 1983. Ex. 4, ERSRI Action ⁋ 46.

53. The Ring Action is also referenced briefly in the complaint filed in the Legion Partners Action as one of several examples of the alleged "History of Paul Marciano's Misconduct" that began as early as the 1980s and "The Company's



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

Failure to Adequately Address Paul Marciano's Repeated Misconduct." Ex. 5, Legion Partners Action ⁋⁋ 25, 27.

54. The Ring Action was a lawsuit initiated on September 25, 2009, by a former Guess model against Paul Marciano and her employer, Guess. The lawsuit sought damages for personal injuries the plaintiff allegedly suffered due to the hostile work environment Paul Marciano created at Guess by repeatedly making unwanted sexual advances on her that allegedly rose to the level of assault on multiple occasions and, after reporting the misconduct resulted in reduced work hours, culminated in her constructive discharge. The plaintiff also sought damages for invasion of privacy based on Guess's alleged use of a form made of the plaintiff's body without her consent. A true and correct copy of the Ring Complaint is attached hereto as Exhibit 6. The Excess Carriers incorporate the contents of the Ring Complaint as if fully set forth herein.

55. The Ring Action is not the only reference in the Derivative Actions to allegations that Paul Marciano engaged in sexual misconduct before the 2018 Special Committee Investigation. Both Derivative Actions allege that Paul Marciano engaged in sexual misconduct prior to the 2009 Ring Action and that complaints were lodged against him for sexual misconduct prior to the time of the 2009 Ring Action.

56. For example, the ERSRI Action alleges that three women filed a sexual misconduct complaint against Paul Marciano in 1993. Ex. 4, ERSRI Complaint ⁋ 45.

**<u>CAUSES OF ACTION</u>**

**<u>COUNT 1</u>**

**(Declaratory Relief – By Excess Carriers Against All Defendants – No Coverage for Derivative Actions Because Not "Claims" First Made During the 2008-09 Policy Period)**

57. The Excess Carriers repeat and incorporate by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

58. The ERSRI Action, filed on September 19, 2022, is not a **Claim** first made during the 2008-09 Policy Period.



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

59. The Legion Partners Action, filed on February 23, 2023, is not a **Claim** first made during the 2008-09 Policy Period.

60. The Derivative Actions allege **Wrongful Acts** committed after the 2008-09 Policy Period.

61. In addition, the Derivative Actions and the 2009 Ring Action do not constitute **Related Claims**.

62. The Ring Action focuses on the allegations of a single employee, Ms. Ring, who alleged she was sexually harassed by Paul Marciano, constructively discharged, and that Guess misappropriated her likeness. The Ring Action sought to recover Ms. Ring's personal damages against Guess and Paul Marciano for harm that Ms. Ring experienced by being sexually harassed and constructively discharged, and from the Company misappropriating her likeness.

63. In contrast, the Derivative Actions allege that directors and officers of Guess breached their fiduciary duties by failing to adequately respond to allegations of sexual misconduct against Paul Marciano once certain of those allegations were elevated to the Board level approximately a decade after the Ring Action was filed. Specifically, the Derivative Actions arise from the alleged inadequacies of the 2018 Special Committee investigation, the Board's failure to follow through on the recommendations from the Special Committee, and the Board's failure to respond to subsequent allegations of sexual misconduct by Paul Marciano after certain corporate governance reforms were allegedly implemented. The Derivative Actions further allege that the Board allowed Maurice Marciano to continue to serve on the Board despite his incapacity. In addition, the Derivative Actions allege that the Board has catered to the Marcianos for years in various related party transactions that benefitted the Marcianos financially. Unlike the personal damages sought by a Guess employee in the Ring Action, the Derivative Actions allege Guess has been harmed by the foregoing conduct and seeks recovery on behalf of Guess as against some or all of the Director Defendants for their alleged breaches of fiduciary duty to Guess.

64. Accordingly, neither the ERSRI Action and the Ring Action, nor the Legion Partners Action and the Ring Action, constitute **Related Claims**, and the Derivative Actions thus are not **Claims** "first made" during the 2008-09 Policy Period.

65. Because the Derivative Actions are in no way **Claims** first made during the 2008-09 Policy Period, the RLI Excess Policy is not triggered and RLI is not liable under the RLI Excess Policy for any **Loss** on account of the Derivative Actions.

66. Because the Derivative Actions are in no way **Claims** first made during the 2008-09 Policy Period, the Arch Excess Policy does not afford coverage and Arch is not liable under the Arch Excess Policy for any **Loss** on account of the Derivative Actions.

67. An actual and justifiable controversy exists between the Excess Carriers and Defendants regarding the Excess Carriers' obligations under the Excess Policies identified herein with respect to the Derivative Actions.

68. By virtue of the foregoing, the Excess Carriers are entitled to a judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions.

**COUNT 2**

**(Alternatively, Declaratory Relief – By Excess Carriers Against All Defendants – If the Derivative Actions Relate Back to Claims Alleging Sexual Misconduct Against Paul Marciano, They Relate Back to Claims Made Prior to the Ring Action and Thus Were Not First Made During the 2008-09 Policy Period)**

69. The Excess Carriers repeat and incorporate by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

70. In the alternative, if the Derivative Actions and the Ring Action are **Related Claims**, then the Derivative Actions are also related to the claims of sexual misconduct against Paul Marciano pre-dating the Ring Action and asserted prior to the 2008-09 Policy Period.



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

71. The Legion Partners Action alleges that Paul Marciano is a "serial predator" whose misconduct began "as early as the 1980s and has continued over the past few decades." Ex. 5, Legion Partners Compl. at ¶¶ 24-25. The ERSRI Action alleges that Paul Marciano "has been accused of sexually harassing and assaulting numerous women over the course of nearly four decades." Ex. 4, ERSRI Compl. at ¶ 42. The ERSRI Action also alleges that three women filed a sexual misconduct complaint against Paul Marciano in 1993. Ex. 4, ERSRI Compl. at ¶ 45.

72. If all suits or demands mentioning Paul Marciano's history of alleged sexual misconduct are to be considered a single **Claim**, then they all "relate" back to at least 1993, if not earlier.

73. For this additional and alternative reason, the Derivative Actions are not **Claims** made first during the 2008-09 Policy Period and are therefore not covered under the RLI Excess Policy or the Arch Excess Policy.

74. An actual and justifiable controversy exists between the Excess Carriers and Defendants regarding the Excess Carriers' obligations under the Excess Policies identified herein with respect to the Derivative Actions.

75. By virtue of the foregoing, the Excess Carriers are entitled to a judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions.

**COUNT 3**

**(Alternatively, Declaratory Relief – RLI Against All Defendants – If the Derivative Actions Relate Back to the Ring Action, There Is No Coverage Under the RLI Excess Policy Until After Exhaustion of the Underlying Limit)**

76. RLI repeats and incorporates by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

77. In the alternative, coverage under the RLI Excess Policy does not apply until after exhaustion of the **Underlying Limit**.

78. The RLI Excess Policy provides:



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

1. Section 1., **INSURING CLAUSE**, is deleted in its entirety and replaced with the following:

"1. The Insurer shall provide the Insureds with insurance during the **Policy Period** excess of the **Underlying Limit**. Coverage hereunder shall attach only after the full amount of the Underlying Limit for such **Policy Period** is paid in legal currency by:

(a) the Insurers of the **Underlying Insurance** or DIC Insurance, if purchased, or,

(b) The **Insureds**, if an Insurer of the **Underlying Insurance** is insolvent or if the Insurer otherwise consents to such payment by the **Insureds**, such consent not to be unreasonably withheld.

Coverage hereunder shall then apply in conformance with the terms and conditions of the **Primary Policy** and, to the extent coverage is further limited or restricted thereby, the terms and conditions of any other **Underlying Insurance**, except as otherwise provided herein. In no event shall this Policy grant broader coverage than would be provided by any of the **Underlying Insurance**.

Ex. 2, at 119, RLI Excess Policy, Depletion of Underlying Limits Endorsement.

79. The RLI Excess Policy defines "**Underlying Limit**" to mean "the amount equal to the aggregate of all limits of liability as set forth in Item 4. of the Declarations for all **Underlying Insurance** plus the applicable uninsured retention, if any, under the **Primary Policy**." RLI Excess Policy, Section 2(g).

80. If it is determined that the Derivative Actions arise out of the same or related facts or situations as those in the Ring Action such that they satisfy the definition of **Related Claims**, then there is no coverage under the RLI Excess Policy until after exhaustion of the **Underlying Limit** in accordance with Section I. INSURING CLAUSE. Ex. 2, at 116, RLI Excess Policy, which has not yet occurred.

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

81. An actual and justifiable controversy exists between RLI and Defendants regarding RLI's obligations under the RLI Policy with respect to the Derivative Actions, because the **Underlying Insurance** is not exhausted.

82. By virtue of the foregoing, RLI is entitled to a judgment declaring that coverage is not afforded under the RLI Policy for the Derivative Actions.

**COUNT 4**

**(Alternatively, Declaratory Relief – RLI Against All Defendants – If the Derivative Actions Relate Back to the Ring Action, They are Excluded Pursuant to the RLI Prior and Pending Exclusion)**

83. RLI repeats and incorporates by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

84. In the alternative, the RLI Excess Policy's Prior and Pending Exclusion bars coverage for the Derivate Actions.

85. The RLI Prior and Pending Exclusion provides that RLI:

> shall not be liable under this Policy for any loss which is based upon, arises from or is in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to [February 5, 1997], or the same or any substantially similar fact, circumstance or situation underlying or alleged therein.

Ex. 2, at 117, RLI Excess Policy, Section 8; *see also* RLI Excess Policy, Decl. Item 7.

86. If it is determined that the Derivative Actions arise out of the same or related facts or situations as those in the Ring Action such that they satisfy the definition of **Related Claims**, then in turn the Derivative Actions must also arise out of the same or related facts or situations underlying or alleged in the prior complaints of sexual misconduct by Guess models against Paul Marciano, including the complaint filed by the three individuals in 1993. Ex. 4, ERSRI Compl. at ¶ 45.

87. Therefore, if the Derivative Actions and the Ring Action satisfy the definition of **Related Claims**, coverage for the Derivative Actions is excluded under



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

the RLI Prior and Pending Exclusion because they likewise are based upon, arise from or are in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered against any **Insured** on or prior to February 5, 1997, or the same or any substantially similar fact, circumstance or situation underlying or alleged in a demand, suit, or other proceeding pending prior to February 5, 1997.

## COUNT 5

**(Alternatively, Declaratory Relief – Arch Against All Defendants – If the Derivative Actions Relate Back to the Ring Action, There Is No Coverage Under the Arch Excess Policy Until After Exhaustion of the Underlying Limit)**

88. Arch repeats and incorporates by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

89. In the alternative, coverage under the Arch Excess Policy does not apply until after exhaustion of the **Underlying Limit**.

90. Endorsement No. 3 to the Arch Excess Policy provides, in pertinent part:

1. Section I, B is amended to read in its entirety as follows:

B. The insurance coverage afforded by this Policy shall apply only after:

1. the insurer(s) of the **Underlying Insurance** and/or

2. the **Insureds**, either (i) pursuant to a Limit Reduction Agreement (as defined below) with the insurer(s) of the **Underlying Insurance**, or (ii) by reason of the financial insolvency of the insurer(s) of the **Underlying Insurance**,

shall have paid in legal currency loss covered under the **Underlying Insurance** equal to the full amount of the **Underlying Limit**, and after the **Insureds** shall have paid the full amount of any applicable deductible or self insured retentions.

2. For purposes of this Policy, the **Underlying Limit** shall be deemed to be depleted or exhausted solely as the result of the insurer(s) of the



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

**Underlying Insurance** and/or the **Insureds** paying loss covered under the **Underlying Insurance** as provided in paragraph 1. of this endorsement.

Ex. 3, at 136, Arch Excess Policy, Endorsement No. 3.

91. The Arch Excess Policy defines "**Underlying Limit**" to mean "an amount equal to the aggregate of all limits of liability for all **Underlying Insurance**, plus the deductible or self-insured retention, if any, applicable under the **Primary Policy**." Ex. 3, at 131, Arch Excess Policy, Section III, DEFINITIONS. E.

92. If it is determined that the Derivative Actions arise out of the same or related facts or situations as those in the Ring Action such that they satisfy the definition of **Related Claims**, then there is no coverage under the Arch Excess Policy until after exhaustion of the Underlying Limit in accordance with Section I. INSURING AGREEMENT. B. Ex. 3, at 130, Arch Excess Policy, which has not yet occurred.

93. An actual and justifiable controversy exists between Arch and Defendants regarding Arch's obligations under the Arch Excess Policy with respect to the Derivative Actions, because the **Underlying Insurance** is not yet exhausted.

94. By virtue of the foregoing, Arch is entitled to a judgment declaring that coverage is not afforded under the Arch Excess Policy for the Derivative Actions.

## COUNT 6

**(Alternatively, Declaratory Relief – Arch Against All Defendants – If the Derivative Actions Relate Back to the Ring Action, They are Excluded Pursuant to the Arch Pending and Prior Exclusion)**

95. Arch repeats and incorporates by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

96. In the alternative, the Arch Excess Policy's Pending and Prior Exclusion bars coverage for the Derivative Actions.

97. The Arch Excess Policy's "PENDING AND PRIOR LITIGATION EXCLUSION (EXCESS)" Endorsement provides:



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

In consideration of the premium charged, it is hereby understood and agreed that:

4. The **Excess Insurer** shall not be liable to make any payment in connection with a **Claim** arising out of, based upon or attributable to:

   a. any litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** occurring prior to, or pending as of, 2/5/1997;

   b. any subsequent litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured** arising from or based on any matter alleged in such prior or pending litigation, formal or informal investigations, administrative proceedings, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**; or

   c. any **Wrongful Act** which gave rise to such prior or pending litigation, formal or informal investigations, administrative proceedings, claim, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any **Insured**, or any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described above, constitute **Interrelated Wrongful Acts**.

5. "**Wrongful Act**" means any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act.

6. "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of casually connected facts, circumstances, situations, events transactions or causes.

All other terms and conditions of this Policy remain unchanged.

(the "Arch Pending and Prior Exclusion"). Ex. 3, at 134, Arch Excess Policy, Endorsement No. 1.

98. If it is determined that the Derivative Actions arise out of the same or related facts or situations as those in the Ring Action such that they satisfy the definition of **Related Claims**, then in turn the Derivative Actions must also arise out of the same or related facts or situations underlying or alleged in the prior complaints of sexual misconduct by Guess models against Paul Marciano, including the complaint filed by the three individuals in 1993. Ex. 4, ERSRI Compl. at ¶ 45.

99. Therefore, if the Derivative Actions and the Ring Action satisfy the definition of **Related Claims**, coverage for the Derivative Actions is excluded under the Arch Pending and Prior Exclusion because they likewise arose from the same situation alleged in a demand, suit, or other proceeding pending prior to February 5, 1997 or a **Wrongful Act** which gave rise to such prior or pending litigation.

100. An actual and justifiable controversy exists between Arch and Defendants regarding Arch's obligations under the Arch Excess Policy identified herein with respect to the Derivative Actions.

101. By virtue of the foregoing, Arch is entitled to a judgment declaring that coverage is not afforded under the Arch Excess Policy identified herein for the Derivative Actions.

**<u>COUNT 7</u>**

**(Alternatively, Declaratory Relief – By Excess Carriers Against All Defendants – No Coverage for Intentional Conduct and/or Conduct in Non-Insured Person Capacity)**

102. The Excess Carriers repeat and incorporate by reference the allegations in paragraphs 1-56 of this Complaint as though fully set forth herein.

103. Under California law, "an insurer is not liable for a loss caused by the wilful act of the insured." Cal. Ins. Code § 533.

104. Alternatively, if it is deemed that the Derivative Actions are considered a **Claim** first made during the 2008-09 Policy Period, then they nonetheless are not covered to the extent any loss in connection with the Derivative Actions was caused



TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

by willful acts of an insured, including but not limited to decades-long pervasive sexual assault and harassment.

105. Alternatively, if it is deemed that the Derivative Actions are considered a **Claim** first made during the 2008-09 Policy Period, then they nonetheless are not covered to the extent any loss in connection with the Derivative Actions was caused by a Director Defendant in a non-Insured Person capacity, including decades-long pervasive sexual assault and harassment.

106. An actual and justifiable controversy exists between the Excess Carriers and Defendants regarding the Excess Carriers' obligations under the Excess Policies identified herein with respect to the Derivative Actions.

107. By virtue of the foregoing, and in the alternative, the Excess Carriers are entitled to a judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions by operation of California Insurance Code § 533.

108. By virtue of the foregoing, and in the alternative, the Excess Carriers are entitled to a judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions due to conduct in a non-Insured Person capacity.

**PRAYER FOR RELIEF**

WHEREFORE, the Excess Carriers pray for the following relief and for judgment against Defendants as follows:

**COUNT 1**

1. A judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions because the Derivative Actions do not constitute **Claims** first made during the 2008-09 Policy Period.

**COUNT 2**

2. In the alternative, a judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions because they

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

"relate back" to claims made against Paul Marciano and Guess prior to the 2008-09 Policy Period and therefore are not claims "first made" during the 2008-09 Policy Period.

**COUNT 3**

3. In the alternative, a judgment declaring that coverage is not afforded under the RLI Excess Policy for the Derivative Action until after exhaustion of the **Underlying Limit** pursuant to the RLI Excess Policy, Depletion of Underlying Limits Endorsement.

**COUNT 4**

4. In the alternative, a judgment declaring that coverage is not afforded under the RLI Excess Policy for the Derivative Actions because they "relate back" to claims made against Paul Marciano and Guess prior to February 5, 1997 and are therefore excluded under the RLI Excess Policy's Prior and Pending Matters Exclusion.

**COUNT 5**

5. In the alternative, a judgment declaring that coverage is not afforded under the Arch Excess Policy for the Derivative Actions until after exhaustion of the **Underlying Limit** pursuant to the Arch Excess Policy's Endorsement No. 3.

**COUNT 6**

6. In the alternative, a judgment declaring that coverage is not afforded under the Arch Excess Policy for the Derivative Actions because they "relate back" to claims made against Paul Marciano and Guess prior to the 2008-09 Policy Period and are therefore excluded under the Arch Excess Policy's Pending and Prior Exclusion.

**COUNT 7**

7. In the alternative, a judgment declaring that coverage is not afforded under the Excess Policies identified herein for the Derivative Actions because they

TROUTMAN PEPPER HAMILTON SANDERS LLP
THREE EMBARCADERO CENTER, SUITE 800
SAN FRANCISCO, CA 94111

arise out of willful conduct and thus are not insurable by operation of California Insurance Code § 533.

**ALL COUNTS**

8. For each Excess Carrier's costs of suit herein; and

9. For such other relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Dated: April 7, 2023

TROUTMAN PEPPER HAMILTON SANDERS LLP

By: */s/ Jennifer Mathis*
Jennifer Mathis
Peter W. Bloom

Attorneys for Plaintiff RLI Insurance Company

Dated: April 7, 2023

FOLEY & LARDNER LLP

By: */s/ Kimberly A. Klinsport*
Kimberly A. Klinsport
Kelsey C. Finn

Attorneys for Plaintiff Arch Insurance Company

[Authority to attach e-signature provided on April 7, 2023]